USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/3/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OLUSEYI ADENIJI,

                Plaintiff,

-v-

NEW YORK STATE OFFICE OF THE
STATE COMPTROLLER,

                Defendant.

18 Civ. 0761 (PAE) (BCM)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Plaintiff Oluseyi Adeniji, proceeding *pro se*, brings this action for race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). Adeniji alleges that the New York State Office of the State Comptroller ("OSC") failed to hire him for the position of "State Program Examiner 1" because of his race.

On January 11, 2019, OSC moved to dismiss, Dkt. 22, Adeniji's Amended Complaint, Dkt. 18 ("AC"). On July 31, 2019, the Hon. Barbara C. Moses, Magistrate Judge, issued a Report and Recommendation to this Court, recommending that the motion to dismiss be denied. Dkt. 33 (the "Report"). On August 14, 2019, OSC filed a memorandum of law setting forth its objections to the Report. Dkt. 34 ("Objections").

For the following reasons, the Court adopts the Report in its entirety.

1

I.  **Background**

The Court adopts the Report's detailed account of the facts and procedural history, to which no party objects. The following summary captures the limited facts necessary for an assessment of the issues presented.[1]

Adeniji alleges that he is African-American, earned a master's degree in economics from the City University of New York, and has more than 10 years of relevant job experience in accounting and auditing. Report at 4. Adeniji applied for the position of State Program Examiner 1 with OSC, a "political subdivision of the State of New York . . . tasked with auditing government operations." *Id.* (quoting AC ¶¶ 3–4). Applicants for the position—the duties of which involved assisting in financial performance audits of state departments and agencies— were required to have an advanced degree in economics and/or accounting, as well as two years of qualifying professional accounting and/or auditing expertise. *Id.* at 4–5. Thus, Adeniji alleges he was "qualified for the Position." *Id.* at 5 (quoting AC ¶ 11).

On October 6, 2016, Adeniji interviewed for the job in OSC's Albany, New York office. *Id.* Two white OSC employees conducted the interview.[2] *Id.* At the heart of Adeniji's claim are two comments allegedly made by one interviewer. First, "[b]efore the interview began, one of the [interviewers] looked at [Adeniji] and said that the assigned location for the Position in

---

[1] The summary is drawn primarily from the Report, the AC, and the New York State Division of Human Rights' Determination and Order after Investigation, dated December 19, 2017, Dkt. 23, Ex. A ("NYSDHR Order"), which was incorporated by reference in plaintiff's AC and helpfully provided by OSC. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("[O]n a motion to dismiss, a court may consider documents attached to the complaint as an exhibit or any statements or documents incorporated in it by reference."). For the purpose of resolving the motion to dismiss under Rule 12(b)(6), the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[2] The position(s) held by these two employees is not specified in the AC, the Report, or any brief on the motion to dismiss.

Newburgh, NY, was a predominately white neighborhood." *Id.* (quoting AC ¶ 6). Adeniji had not asked about the demographics of the assigned location. *Id.* Second, the same interviewer expressed surprise that Adeniji "was not of Japanese descent, as A[deniji] is a typical Japanese surname." *Id.* (quoting AC ¶ 8).

In April 2017, Adeniji was rejected for the position, which he alleges, on information and belief, remained open as OSC sought similarly qualified applicants. *Id.* On January 23, 2018, Adeniji obtained a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC). *Id.* at 2; *see* AC ¶ 22.

## II. Discussion

### A. Applicable Legal Standards

#### 1. Report and Recommendation

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When specific objections are made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (citing *Wilds v. U.P.S.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)); *see also Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citation omitted).

To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the court will review the Report and Recommendation strictly for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094,

at *1 (S.D.N.Y. June 25, 2013); *Kozlowski v. Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 0812 (RJH), 2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012).

### 2. Motion to Dismiss Pursuant to Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Although the court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014), that tenet "is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678.

Where, as here, the plaintiff is *pro se*, his complaint must be construed "liberally, reading it with special solicitude and interpreting it to raise the strongest claims that it suggests." *J.S. v. T'Kach*, 714 F.3d 99, 103 (2d Cir. 2013) (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). This mandate "applies with particular force when a plaintiff's civil rights are at issue." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009). Consistent with that approach, factual allegations made in a *pro se* plaintiff's opposition papers, or the attachments thereto, may be considered "as supplementing the Complaint, at least to the extent they are consistent with the allegations in the Complaint." *George v. Pathways to Hous., Inc.*, No. 10 Civ. 9505 (ER), 2012 WL 2512964, at *6 n.7 (S.D.N.Y. June 29, 2012).

However, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Maisonet*, 640 F. Supp. 2d at 348 (internal quotation marks and citation omitted). Thus, even a *pro se* plaintiff "must state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). Moreover, the court need not accept allegations that are "contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005).

### 3. Title VII

Title VII prohibits discrimination in employment based upon certain protected characteristics, including race. 42 U.S.C. § 2000e-2. It is unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" based on a protected characteristic. *Id.* § 2000e-2(a)(1).

To establish a *prima facie* case for a failure-to-hire claim under Title VII, a plaintiff must show that: (1) he is a member of a protected class; (2) he is qualified for the position; (3) he was rejected from that position; and (4) there exist circumstances that give rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Littlejohn v. City of N.Y.*, 795 F.3d 297, 307 (2d Cir. 2015); *see Wang v. Phx. Satellite Television U.S., Inc.*, No. 13 Civ. 218 (PKC), 2013 WL 5502803, at *9 (S.D.N.Y. Oct. 3, 2013) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

At the pleading stage, the plaintiff's burden with regard to the fourth element of the *McDonnell Douglas* test is "minimal." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting *Littlejohn*, 795 F.3d at 310). "[H]e need only plausibly allege facts that provide 'at least minimal support for the proposition that the employer was

5

motivated by discriminatory intent.'" *Vega*, 801 F.3d at 86–87 (quoting *Littlejohn*, 795 F.3d at 311); *accord Bagarozzi v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 4893 (RA), 2019 WL 1454316, at *5 (S.D.N.Y. Mar. 31, 2019). "On a motion to dismiss, the question is not whether a plaintiff is likely to prevail, but whether the well-pleaded factual allegations plausibly give rise to an inference of unlawful discrimination, i.e., whether plaintiffs allege enough to 'nudge[] their claims across the line from conceivable to plausible.'" *Vega*, 801 F.3d at 87 (quoting *Twombly*, 550 U.S. at 570) (emphasis in original). Moreover, in reviewing a Title VII plaintiff's factual allegations for plausibility, "the court must be mindful of the 'elusive' nature of intentional discrimination," *id.* at 86 (quoting *Burdine*, 450 U.S. at 255 n.5), and "draw on its judicial experience and common sense," *id.* (quoting *Iqbal*, 556 U.S. at 679).

**B.     Application**

OSC's motion to dismiss "centers on whether plaintiff Adeniji has plausibly alleged circumstances giving rise to an inference of unlawful discrimination"—the fourth element of the *McDonnell Douglas* test. Report at 9 (internal quotation marks and citation omitted). Judge Moses concluded that the two alleged comments about race that were made by one of Adeniji's interviewers during his job interview plausibly gave rise to such an inference. *Id.* at 15.

In analyzing whether comments about race (or other protected characteristics) are indicative of discriminatory intent, courts in this Circuit consider four factors:

> (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process).

*Henry v. Wyeth Pharms. Inc.*, 616 F.3d 134, 149 (2d Cir. 2010). "Although evidence of one stray comment by itself is usually not sufficient proof to show . . . discrimination, that stray comment may bear a more ominous significance when considered within the totality of all the

6

evidence." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) (finding that a comment made during a discharge meeting that plaintiff "should 'retire'" supported plaintiff's *prima facie* case of age discrimination).

In the instant case, Judge Moses recommended that, although the content of the OSC interviewer's remarks alone would not indicate discriminatory intent, a sufficient inference of such intent arose to justify sustaining the complaint from (1) who made the remarks, (2) when the remarks were made, and (3) the context in which they were made. Report at 13 (citing *Meyer*, 174 F. Supp. 3d at 691); *see Henry*, 616 F.3d at 149. OSC timely filed an objection to the Report, arguing that the interviewer who allegedly made the two comments regarding Adeniji's race "was not the decision-maker" and that the other factors from *Henry* do not indicate discriminatory intent.[3] Objections at 7–8.

The Court agrees with Judge Moses that dismissal at this early stage is unwarranted and adopts her thoughtful analysis of this issue. *See* Report at 10–15. Comments made *during* a job interview *by the interviewer* may be indicative of discriminatory animus in the hiring process. *See id.* at 12. For example, in *Meyer v. New York Office of Mental Health*, plaintiff brought a Title VII failure-to-hire claim based largely on "some reference" to plaintiff's "Jewish family" made "in passing" during plaintiff's unsuccessful job interview. 174 F. Supp. 3d 673, 684 (E.D.N.Y. 2016), *aff'd sub nom. Meyer v. N.Y. State Office of Mental Health*, 679 F. App'x 89

---

[3] OSC has not objected to the Report's analysis of when the remark was made. OSC's objections regarding content and context solely reiterate the arguments it made before Judge Moses. *See* Objections at 8. Thus, the Court reviews the Report's analysis regarding those three factors for clear error, which the Court does not find. *See Greiner*, 2009 WL 2001439, at *4 (clear error review for issues on which no objection is made); *Dickerson*, 2013 WL 3199094, at *1 (clear error review where objections simply reiterate previous arguments). Nonetheless, the Court addresses all four factors in its analysis here, and the Court would reach the same result even on plenary review. *See Carlton*, 202 F.3d at 136 (analyzing individual factor "within the totality of the evidence").

7

(2d Cir. 2017). Although the comments were not overtly hostile,[4] the court concluded that the fact that the comments had been made by a "decision-maker" in the hiring process "*during* the [job] interview" made them probative of discriminatory intent in the hiring process. *Id.* at 691. The court further explained that although the "vague nature of this reference alone would likely be insufficient to give rise to an inference of discrimination, the context, namely, that it was made without an apparent job-related purpose or justification *during* the interview at issue, nudges this remark over the line from stray remark to evidence of discriminatory animus." *Id.*

Similarly, here, the alleged comments—first informing plaintiff, without prompting, that the job he sought was in a white neighborhood, and then expressing surprise that plaintiff was not Japanese given his surname—were made during Adeniji's job interview by the interviewer. The alleged commenter was one of the two individuals who then determined, largely based on that interview, not to allow Adeniji's employment application to move forward.[5] The Court agrees with Magistrate Judge Moses's conclusion that "[t]his context, together with the fact that both comments were made 'without an apparent job-related purpose or justification,' 'nudges' them 'over the line from stray remark to evidence of discriminatory animus.'" Report at 13 (quoting *Meyer*, 174 F. Supp. 3d at 691); *see Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115–16 (2d Cir. 2007) ("The relevance of discrimination-related remarks does not depend on their offensiveness, but rather on their tendency to show that the decision-maker was motivated

---

[4] Plaintiff in *Meyer* alleged the interviewer made references to her "ethnic background of hard work[], . . . [and being] interested in earning extra finances," that created a "flavor of anti-Semitism." *Id.*

[5] The NYSDHR Order found, *inter alia*, that Adeniji was "not selected for advancement in the interview process . . . based on his application materials and interview performance." NYSDHR Order at 1–2. As the Report notes, only the two individuals who interviewed Adeniji were in a position to judge his "interview performance." Report at 13.

8

by assumptions or attitudes relating to the protected class. Inoffensive remarks may strongly suggest that discrimination motivated a particular employment action."), *abrogated on other grounds, Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167 (2009). Given who made the alleged comments, when they were made, and the context in which they were made, Adeniji has "plausibly allege[d] facts that provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Vega*, 801 F.3d at 86–87 (quoting *Littlejohn*, 795 F.3d at 311).

OSC, however, argues that the interviewer was not a decisionmaker with regard to Adeniji's application because "the NYSDHR Order does not describe the interviewer's assessment as dispositive on the outcome of Plaintiff's employment application." Objections at 7. OSC does not cite, and the Court did not independently find, any authority supporting the proposition that a person who comments on race must have a dispositive influence over the hiring process in order to be considered a decisionmaker in that process.

Instead, OSC argues that—because the NYSDHR Order, in addition to citing Adeniji's interview performance, also lists "a poor writing sample" and "a resume with gaps in his employment history," NYSDHR Order at 2, as reasons why Adeniji's application was not advanced—the interviewer could not have been a decisionmaker. However, these alternative explanations for the failure to hire Adeniji are, at most, "legitimate, non-discriminatory reason[s] for [failing to hire] the employee." *Carlton*, 202 F.3d at 134. Under the *McDonnell Douglas* burden-shifting framework, on a motion for summary judgment, if a plaintiff establishes a *prima facie* case of discrimination, a rebuttable presumption of discrimination arises. *Id.* A defendant can rebut that presumption by "articulat[ing] a legitimate, non-discriminatory reason" for the adverse employment action. *Id.* At the pleading stage, however, "[t]he plaintiff cannot

9

reasonably be required to allege more facts in the complaint than the plaintiff would need to defeat a motion for summary judgment made prior to the defendant's furnishing of a non-discriminatory justification." *Littlejohn*, 795 F.3d at 311. On a motion for summary judgment, OSC's non-discriminatory explanations may ultimately prove enough to defeat Adeniji's claims.[6] But, at this stage, Adeniji has carried his burden plausibly to allege facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.*

## CONCLUSION

For the foregoing reasons, the Court accepts and adopts Judge Moses's July 31, 2019 Report and Recommendation. OSC's motion to dismiss is denied.

The Court respectfully directs the Clerk of Court to terminate the motions pending at Dkts. 14 and 22.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: September 3, 2019
      New York, New York

---

[6] Indeed, in *Meyer*, the court ultimately granted defendants' motion for summary judgment based on legitimate, non-discriminatory reasons proffered for the failure to hire plaintiff. 174 F. Supp. 3d at 691–92.