UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OLUSEYI ADENIJI,

         Plaintiff,

    -v-

NEW YORK STATE OFFICE OF THE
STATE COMPTROLLER,

         Defendant.

18 Civ. 0761 (PAE) (BCM)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

  Plaintiff Oluseyi Adeniji, proceeding *pro se*, brings this action for race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). Adeniji alleges that the New York State Office of the State Comptroller ("OSC") failed to hire him for the position of State Program Examiner 1 because of his race.

  On October 9, 2020, OSC moved for summary judgment, Dkt. 84, on Adeniji's Amended Complaint, Dkt. 18 ("AC"). On July 21, 2021, the Hon. Barbara C. Moses, Magistrate Judge, issued a Report and Recommendation to this Court, recommending that the motion for summary judgment be granted. Dkt. 114 (the "Report"). On August 4, 2021, Adeniji filed a memorandum of law setting forth his objections to the Report. Dkt. 115 ("Objections"). On August 11, 2021, OSC filed an opposition to Adeniji's objections. Dkt. 116 ("Opp'n").

  For the following reasons, the Court adopts the Report in its entirety.

1

**I.       Background**

    **A.       Factual Background**

The Court adopts the Report's detailed account of the facts and procedural history, to which no party objects. The following summary captures the limited facts necessary for an assessment of the issues presented.[1]

Adeniji is an African-American man. OSC 56.1 ¶ 1; Adeniji 56.1 ¶ 1. On September 22, 2016, he applied for a position as a State Program Examiner ("SPE") with OSC. OSC 56.1 ¶ 3; Adeniji 56.1 ¶ 3. OSC "is an agency of the State of New York which, among other things, conducts financial audits of local governments, schools and state agencies." OSC 56.1 ¶ 2; Adeniji 56.1 ¶ 2. Applicants for the position—the duties of which involved assisting in financial performance audits of state departments and agencies—were required to have an advanced degree in economics and/or accounting, and two years of qualifying professional accounting and/or auditing expertise. Report at 2–3; Klein Reply Decl. Ex. A, at 1–2.

---

[1] The summary is drawn primarily from the parties' submissions in support of and in opposition to OSC's motion for summary judgment, including OSC's Rule 56.1 Statement, Dkt. 93 ("OSC 56.1"), Adeniji's response to OSC's Rule 56.1 Statement, Dkt. 106 ("Adeniji 56.1"), and the Declarations (some with accompanying exhibits) of Ingrid M. Otto, Dkt. 86 ("Otto Decl."), Kara Deiana, Dkt. 87 ("Deiana Decl."), Courtney E. Bernard, Dkt. 88 ("Bernard Decl."), Randy J. Hotaling, Dkt. 89 ("Hotaling Decl."), Mary Eileen Barret, Dkt. 90 ("Barret Decl."), and Mark E. Klein, Dkt. 91 ("Klein Decl."), and the reply declarations of Courtney E. Bernard, Dkt. 110 ("Bernard Reply Decl.") and Mark E. Klein, Dkt. 111 ("Klein Reply Decl.").

Citations to a party's Rule 56.1 statement incorporate by reference the documents cited therein. Where facts stated in a party's Rule 56.1 statement are supported by testimonial or documentary evidence, and are denied by a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts true. See S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); id. at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[ ] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

2

If an applicant for the position met minimum requirements, the applicant would complete an "education and experience questionnaire," after which a score would be generated for the applicant. Klein Reply Decl. Ex. A, at 3. The score is based on, *inter alia*, overall grade point average and grade point average within the applicant's major; "other relevant coursework;" professional activities; and qualifying work experience. *Id.* Applicants are notified via the application form that the information they provide will be verified by OSC's Division of Human Resources ("HR"). *Id.*; OSC 56.1 ¶ 5 ("The *initial* scoring of an applicant's exam is . . . based solely on information provided by the applicant . . . . It is not unusual, however, for an applicant's exam score to change (usually downward) once HR has gone through the process of verifying the score." (emphasis in original) (citing Bernard Decl. ¶ 6)). Pursuant to the New York State Department of Civil Service's ("Civil Service") "Rule of Three," an applicant can be eligible for hiring only if (1) the applicant has a verified score of 100, or (2) all interested applicants who scored 100 must have declined the position to be eligible for hiring. OSC 56.1 ¶ 8; Report at 4. "Thus, it is rare for an applicant who has scored less than 100 to be hired off of the Civil Service list for an SPE position." Report at 4.

After applying for the SPE position and completing the questionnaire, Adeniji communicated regarding the position with Ingrid M. Otto, an Auditor 2 (Municipal) in OSC's Local Official Training Unit. Otto Decl. ¶¶ 2, 5–6; OSC 56.1 ¶¶ 11–17; Adeniji 56.1 ¶¶ 11–15; Report at 5–6. On October 6, 2016, Adeniji interviewed for the job with Otto and Kara Deiana, a Supervising Accountant in OSC's Division of Payroll, Bureau of Accounting and Revenue Services. Deiana Decl. ¶ 4. *See* OSC 56.1 ¶¶ 20, 21; Adeniji 56.1 ¶¶ 20, 21. "Otto and Deiana decided not to recommend [Adeniji] for a second interview." Report at 7 (citing OSC 56.1 ¶ 21; Otto Decl. Ex. H, at 3; Adeniji 56.1 ¶ 21). Otto and Deiana attest that they made their decision

3

"based on [Adeniji's] application, the two versions of his resume, his responses to the questions they asked him at his interview, and his writing sample." Report at 7 (citing OSC 56.1 ¶ 21, Otto Decl. ¶ 15, and Deiana Decl. ¶ 8); *see also* OSC 56.1 ¶¶ 23–30.

Adeniji, however, argues that he was not hired because of racial discrimination. Adeniji states: "I was not recommended for the interview because of my race. As I entered the location, I could feel the rejection based on their body language. They were looking for a white candidate because of [sic] the assigned location, Newburgh, is a predominantly white neighborhood." Adeniji 56.1 ¶ 21; Report at 9.[2]

In April 2017, Adeniji's score was adjusted downwards, from his initial score of 100, to a verified score of 90 following HR's investigation of his qualifications, making him ineligible to be hired from the Civil Service list. OSC 56.1 ¶¶ 7, 36; *see* Adeniji 56.1 ¶ 36 (contesting downward score adjustment and arguing that he should have been hired for the position even with a score of 90); Report at 4 n.4. Adeniji exhausted his administrative remedies and filed this suit. *See* Report at 14.

### B. Procedural History

#### 1. Adeniji's Claims and OSC's Summary Judgment Motion

On January 26, 2018, Adeniji filed his original complaint in this action, alleging race and age discrimination under Title VII, two other federal statutes, and state law. Dkt. 2 at 3–5. On

---

[2] In so casting his racial discrimination claim, Adeniji, as the Report perceptively observes, "appears to have abandoned the more specific claim, alleged in his pleading, that his interviewers made two unprompted comments about race during the October 6, 2016 interview." Report at 25. In his amended complaint, Adeniji had alleged that one employee who interviewed him had stated that Newburgh, New York, where the position was to be based, was "a predominantly white neighborhood," and "commented that they were surprised that [Adeniji] was not of Japanese descent, as [Adeniji] is a typical Japanese surname." Dkt. 18 ¶¶ 6, 8. However, Adeniji "does not mention the alleged remarks in his summary judgment papers." Report at 25. The Report therefore appropriately treated the claims as abandoned. *See id.*

4

July 30, 2018, the Court referred the case to Magistrate Judge Moses for general pretrial management and a report and recommendation on dispositive motions. Dkt. 6. On November 5, 2018, OSC filed its first motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Adeniji's Title VII claim should be dismissed because he failed to allege facts sufficient to show that he was qualified for the position or that OSC's failure to hire him was motivated by discriminatory intent, and that his remaining claims were barred by the Eleventh Amendment. Dkt. 14.

On November 6, 2018, Judge Moses gave Adeniji an opportunity to amend his complaint. Dkt. 15. On November 26, 2018, Adeniji filed his amended complaint, asserting a single claim against OSC, under Title VII, for race discrimination. Dkt. 18. On January 11, 2019, OSC again moved to dismiss. Dkt. 22. On July 31, 2019, Judge Moses issued a report recommending that OSC's motion to dismiss be denied because Adeniji had met the minimal pleading burden. Dkt. 33. On September 3, 2019, the Court denied the motion. Dkt. 35.

On October 17, 2019, OSC filed an answer. Dkt. 43. On October 9, 2020, after discovery, OSC filed its motion for summary judgment, Dkt. 84, associated declarations, Dkts. 86–91, and its Rule 56.1 statement, Dkt. 93. On January 5, 2021, Adeniji filed his Response to OSC's Rule 56.1 Statement and supporting declaration, Dkt. 106, but did not submit a separate legal brief. On January 22, 2021, OSC submitted its reply. Dkts. 112, 113.

### 2.     The Report and Recommendation

On July 21, 2021, Judge Moses issued the Report. Dkt. 114. She recommended that the Court grant OSC's motion for summary judgment on three grounds.

First, Adeniji could not establish a *prima facie* case for discrimination under Title VII because he could not show he was eligible for the SPE position. *Id.* at 20. Adeniji's verified

5

Case 1:18-cv-00761-PAE-BCM   Document 117   Filed 08/31/21   Page 6 of 15

score was 90, and under Civil Service's "Rule of Three," he "could not have been hired" with that score. *Id.* at 21. On that basis alone, OSC was entitled to summary judgment. *Id.* at 22.

Second, Adeniji failed to raise an inference of discrimination. *Id.* at 22–23. "[T]here is no evidence that similarly situated applicants who were not African-American were treated more favorably than [Adeniji]," *id.* at 23, based on the evidence OSC presented about its hiring, *id.* at 24. Nor did Adeniji present any admissible evidence of Otto's or Deiana's discriminatory animus. *Id.* Instead, he had "speculative beliefs and gut feelings," *id.* at 25 (quoting *Adeniji v. Admin. For Child Servs.*, 43 F. Supp. 2d 407, 424 (S.D.N.Y. 1999) (internal citation omitted)), had abandoned his earlier claim that comments about his race had been made during the evaluation process, *id.* at 25–26, and presented only "vague and skimpy" evidence about such comments, *id.* at 26. The absence of such evidence, Judge Moses noted, was reinforced by the investigation by the New York State Division of Human Rights ("SDHR"), which did not find any evidence that OSC had been motivated by discriminatory animus. *Id.* at 27.

Third, Adeniji failed to counter OSC's legitimate, non-discriminatory reasons for not hiring Adeniji: "his history of frequent job changes, the significant inconsistencies between the two versions of his resume submitted to OSC, and his poor writing sample." *Id.* at 29. As a result of Adeniji's application's "striking deficiencies" for a job that required "lengthy training, careful attention to detail," and writing skills, the Report concluded, "no rational juror could reject [OSC's] compelling explanation for its decision in favor of [Adeniji's] feelings and perceptions of being discriminated against." *Id.* (internal quotation marks omitted).

6

## II. Discussion

### A. Applicable Legal Standards

#### 1. Standard of Review for a Report and Recommendation

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When specific objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (citing *Wilds v. U.P.S.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)); *see also Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006).

To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the court will review the Report and Recommendation strictly for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *Kozlowski v. Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 0812 (RJH), 2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012). This is so even in the case of a *pro se* plaintiff. *See Dickerson*, 2013 WL 3199094, at *1; *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009).

#### 2. Standards Governing Motions for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a

7

question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

### 3. Elements of Claims Under Title VII

Under Title VII, a plaintiff establishes "an unlawful employment practice . . . when [he] demonstrates that . . . race was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). In the absence of direct evidence of discrimination, discrimination claims under Title VII are guided by the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this analysis, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. To do so, the plaintiff must show "(1) that she was within the protected [class],

8

(2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010). "This burden is not a heavy one." *Id.* A plaintiff cannot establish a *prima facie* case, however, based on "purely conclusory allegations of discrimination, absent any concrete particulars." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. denied*, 474 U.S. 829 (1985).

If the plaintiff can demonstrate a *prima facie* case, the burden of production shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the disparate treatment." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (internal quotation marks and citations omitted). "[I]f the defendant satisfies this burden of production, the plaintiff has the ultimate burden to prove that the employer's reason was merely a pretext for discrimination." *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996). A plaintiff is not "required to prove the prohibited motivation was the sole or even the principal factor in the decision, or that the employer's proffered reasons played no role in the employment decision." *Finn v. N.Y. State Off. of Mental Health-Rockland Psychiatric Ctr.*, No. 08 Civ. 5142 (VB), 2011 WL 4639827, at *11 (S.D.N.Y. Oct. 6, 2011) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 78 (2d Cir. 2001)). Rather, the plaintiff "must show that those were not the only reasons and that [the] plaintiff's protected status contributed to the employer's decision." *Id.*

**B.     Application**

Adeniji makes three objections to the Report—that he met his *prima facie* burden to show that OSC was motivated by discriminatory animus; that he presented sufficient evidence to show that OSC was motivated by discriminatory animus; and that the Report improperly relied on the conclusions of the SDHR investigation.

9

Adeniji does not object to Judge Moses's conclusion that OSC presented legitimate, non-discriminatory reasons for its hiring decision and that Adeniji failed to show that those reasons were pretextual. Accordingly, the Court reviews that conclusion only for clear error. Although Adeniji's objections are largely conclusory, based on new evidence, or reprise arguments already considered and rejected by Judge Moses, the Court, in an excess of caution, reviews those aspects of the Report *de novo*. The Court takes each of Adeniji's objections in turn.

### 1. Adeniji's Prima Facie Burden to Show Discriminatory Animus

Adeniji argues that he met his *prima facie* burden to show discriminatory animus because the Report inadequately considered the process by which OSC arrived at its hiring decision, which, he contends, was motivated by discriminatory animus. Objections at 3. First, Adeniji asserts that he "met all the qualifying requirements" on the Civil Service job announcement. *Id.* Second, Adeniji argues that he was only asked to do a writing sample as part of his interview because English is his second language. *Id.*[3]

Because both of these objections were addressed by Judge Moses, the Court need review them only for clear error. *See Dickerson*, 2013 WL 3199094, at *1. However, even reviewing the record *de novo*, the Court finds this objection unavailing.

First, although Adeniji claims to have "met all the qualifying requirements" on the Civil Service job announcement, Objections at 3, the Civil Service announcement stated that the applicant's answers would be verified, with the applicant's final score calculated post-

---

[3] Adeniji claims in the course of this objection that he overheard one of his interviewers saying "that my assigned work location is white communities" and argues that "the interviewers were not expecting to see an African American because my name is synonymous to a Japanese name...." Objections at 4. He reiterates those claims as part of his second objection—that he did not present evidence permitting an inference of discriminatory motive. The Court addresses these arguments as part of the second objection.

verification. Klein Reply Decl. Ex. A. at 3. Because Adeniji's final score was calculated as under 100, he was not qualified for the position. *See* OSC 56.1 ¶ 34; Bernard Decl. ¶ 10 & Ex. E; *see also* Report at 10–11 (describing verification of Adeniji's score). Adeniji does not provide any non-conclusory basis to challenge the calculation of his score, let alone that any miscalculation was the product of racial discrimination. And because Adeniji could not prove that he was eligible for the position, he cannot establish a *prima facie* case under Title VII. *See Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

Second, there is no evidentiary basis for Adeniji's assertion that he was asked to do a writing sample only because English is his second language. Judge Moses squarely addressed this claim, and, on the Court's own review of the record, correctly disposed of it. The Report explains that Adeniji lacked any basis for this claim "other than [a] selective quotation" from the Civil Service announcement that "[t]here will be no written test . . . . No written test or test date is involved." Report at 7 n.6 (citing Adeniji 56.1 ¶ 16 and Klein Decl. Reply Ex. A, at 3). But the announcement nowhere stated or implied that applicants would not be further screened. On the contrary, Adeniji was told in advance that a writing sample would be required, undermining his speculation that his interviewers acted with discriminatory motives in requiring one. *Id.* Nor was Adeniji singled out for a writing sample; each applicant hired in the Newburgh office between October 2016 and June 2017 supplied a writing sample as part of his or her application. *Id.* (citing OSC 56.1 ¶ 29; Barret Decl. ¶¶ 3–4).

The Court accordingly finds unsubstantiated Adeniji's objection that he carried his *prima facie* burden.

### 2. Adeniji's Evidence of Discriminatory Animus

Adeniji argues that he offered admissible evidence sufficient to permit an inference of discriminatory animus—specifically, that "[o]ne of the interviewers stated that they thought I

11

was an Asia-Japanese origin [sic]. The interviewers went further to say that the location was white communities [sic]." Objections at 4.

At the threshold, the Court does not have any obligation to consider how these remarks could establish evidence of discriminatory animus because "[c]ourts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation." *Ametepe v. Peak Time Parking, Corp.*, No. 18 Civ. 5384 (PAE) (SDA), 2021 WL 1172669, at *3 (S.D.N.Y. Mar. 29, 2021) (quoting *Tavares v. City of New York*, No. 08 Civ. 3782 (PAE), 2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011) (collecting cases)) (alteration in original).[4]

Even taking these comments into account, however, the Court finds Adeniji's objections unavailing. Adeniji's account of these comments was indistinct; he could not recall which of his two interviewers allegedly told him about the demographics of Newburgh being predominantly white[5] or stated that they had been expecting to see a person of Asian or Japanese origin. Klein Decl. Ex. A., at 26–27, 172–73. And Adeniji does not elaborate on these comments, which both Otto and Deiana deny making, and whose meaning is, without more, elusive. Otto Decl. ¶¶ 14–15; Deiana Decl. ¶¶ 7–8. Taking all inferences in Adeniji's favor and crediting that comments along the lines alleged were made by an interviewer, a rational fact-finder could not find these

---

[4] The Report properly treated these allegations, which had been made in Adeniji's Amended Complaint, as abandoned because Adeniji did not mention them in his summary judgment papers. Report at 25–26. The Report nonetheless analyzed Adeniji's claims as if the two alleged comments had been made and Adeniji had preserved his claims based on them. *See id.* at 26. It nonetheless found that the evidence, taken as a whole, would not permit a rational finder of fact to find a discriminatory motive. *See id.* at 27–28.

[5] Newburgh is 21.4% non-Hispanic white. *See* United States Census Bureau, QuickFacts, https://www.census.gov/quickfacts/newburghcitynewyork (last visited Aug. 26, 2021); *see also* Report at 26 n.23.

unattributed and ambiguous comments—unaccompanied by other evidence of discriminatory animus—sufficient to establish such animus. Therefore, this objection fails.

### 3. Role of SDHR Findings

Adeniji next argues that the Report improperly took into account the findings of the SDHR investigation, which found that OSC had not been motivated by discriminatory animus. He states that Judge Moses "improperly relied on the agency's findings," and that the SDHR investigation was "inconclusive" because Adeniji was never interviewed and SDHR "solely based their findings on documentation provided by [OSC]." Objections at 5. Adeniji's objection is not entirely clear as to whether he objects to the process by which the SDHR report was generated[6] or Judge Moses's consideration of it. The Court treats Adeniji's objection as protesting that the Report improperly considered the results of the SDHR investigation, which concluded that OSC was not motivated by discriminatory animus.

That objection fails. Under Second Circuit law, it was proper for Judge Moses to consider the findings of the SDHR investigation, as one of multiple factors that undermined Adeniji's claim that OSC's decision not to hire him resulted from discriminatory animus. *See* Report at 27; *see also Cortes v. MTA New York City Transit*, 802 F.3d 226, 232 (2d Cir. 2015) ("The unreviewed findings of an agency are . . . admissible as evidence under Fed. R. Evid. 803(8)(A)(iii) as 'factual findings from a legally authorized investigation' by a public office." (quoting Federal Rules of Evidence 803(8)(A)(iii))). And Judge Moses did not give the findings of the investigation preclusive effect. Instead, she considered them as part of a broader assessment of the evidence bearing on this element. In finding insufficient evidence of

---

[6] A finding of no probable cause by the SDHR is appealable by the complainant to the New York State Supreme Court. *See* N.Y. Exec. L. § 298. There is no evidence that Adeniji appealed that finding here.

13

discriminatory animus, she noted, too, the lack of any evidence that similarly situated applicants who were not African-American were treated more favorably than Adeniji, Report at 23; the statistical evidence about hiring at OSC, *id.* at 24; and Adeniji's failure to identify any admissible evidence of discriminatory animus by Otto or Deiana, *id.* at 24–25. She also observed that Adeniji had abandoned at summary judgment his earlier claim that the two racially suggestive comments had been made by one of his interviewers. *Id.* at 25–26. The SDHR's conclusions, Judge Moses noted, were consistent with the absence of evidence developed in discovery in this case of discriminatory animus. This observation was proper, and there was no error in Judge Moses's consideration of the SDHR's conclusions. This objection thus also fails.

### 4. OSC's Legitimate, Non-Pretextual Reasons for Not Hiring Adeniji

Critically, Adeniji does not object to the Report's conclusion that OSC presented legitimate, non-discriminatory reasons for its hiring decision and that Adeniji failed to show that those reasons were pretextual. Careful review of Judge Moses's well-reasoned analysis reveals no facial error in that conclusion, which independently would support a grant of summary judgment in OSC's favor, as the Report recommends.

### CONCLUSION

For the foregoing reasons, the Court accepts and adopts Judge Moses's July 21, 2021 Report and Recommendation. OSC's motion for summary judgment is granted.

The Court respectfully directs the Clerk of Court to terminate the motion pending at docket 84.

SO ORDERED.

_Paul A. Engelmayer_
Paul A. Engelmayer
United States District Judge

Dated: August 31, 2021
       New York, New York

15